# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1867 | **DATE** | 9/19/2003 |
| **CASE TITLE** | PRG-SCHULTZ INTL., INC. vs. KIRIX, CORP., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment [101-1] is granted on Count I and denied on Counts II through V. The joint final pretrial order and agreed pattern jury instructions shall be submitted on October 9, 2003 at 9:00 a.m. Plaintiffs' draft shall be submitted to defendants by October 2, 2003. Trial is set on October 20, 2003 at 9:00 a.m. The parties shall submit jurisdictional statements that include the citizenship of the individual defendants and the principal place of business of plaintiff PRGRS, Inc. by September 29, 2003. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

*Suzanne B. Conlon*

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | SEP 22 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | 9/19/2003 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| CB | courtroom deputy's initials | | PW | | |
| | | | mailing deputy initials | | |

CLERK, U.S. DISTRICT COURT

03 SEP 19 PM 4:07

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRG-SCHULTZ INTERNATIONAL, INC. and PRGRS, INC.,          ) | |
|         ) | |
|         ) | No.  03 C 1867 |
|        Plaintiffs,    ) | |
|         ) | Suzanne B. Conlon, Judge |
|     v.         ) | |
|         ) | |
| KIRIX CORPORATION, NATHANAEL B. WILLIAMS, AARON L. WILLIAMS, DAVID Z. WILLIAMS and BENJAMIN I.. WILLIAMS,          ) | |
|         ) | |
|         ) | |
|         ) | |
|        Defendants.    ) | |

DOCKETED
SEP 2 2 2003

## MEMORANDUM OPINION AND ORDER

PRG-Schultz International, Inc. and PRGRS, Inc. (collectively, "plaintiffs") sue Kirix

Corporation ("Kirix") and four former employees, Nathanael, Aaron, David and Benjamin Williams

(collectively, "the individual defendants") for copyright infringement in violation of the Copyright

Act of 1976, 17 U.S.C. § 101 *et seq.* (Count I) and trade secret misappropriation in violation of the

Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.* (Count II). Plaintiffs also bring claims

for common law breach of contract against Nathanael (Counts III and IV) and Aaron (Count V)

individually. Kirix and the individual defendants (collectively, "defendants") move for summary

judgment on all claims pursuant to Fed. R. Civ. P. 56.

## BACKGROUND

**A.     Local Rule 56.1**

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding to

summary judgment motions. Local Rule 56.1 requires both the moving and non-moving parties to

submit a statement of material facts, including, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3); Local Rule 56.1(b)(3)(B). Evidence submitted at summary judgment must be admissible at trial under the Federal Rules of Evidence. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). All facts not properly supported by the record evidence must be disregarded. *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

In response to a motion for summary judgment, Local Rule 56.1 requires the non-moving party to submit a response "to each numbered paragraph in the moving party's statement [of material facts], including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(A). All relevant facts denied without supporting documentation must be accepted as true provided the facts are "properly supported by references to the record or other evidentiary material." *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir. 2000); *Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir. 1993).

Rather than fulfilling their obligations under Local Rule 56.1, the parties and/or their counsel have continued the heated and contentious exchanges that defined their relationship during discovery. Not only does this animosity impact the parties' discussion of the complex issues presented by this case, it affects the court's ability to properly assess the merits of each party's position. Nowhere is this more apparent than in defendants' response to plaintiffs' statement of facts.

Although defendants have the burden of demonstrating the *absence* of a genuine issue of material fact, defendants dispute virtually all 151 factual statements contained in plaintiffs' statement

of facts. In doing so, defendants fail to provide proper support for many of their ill-advised denials. For example, defendants deny ¶¶ 1-5, 7-9, 11-12, 14-22, 25-32, 35-47, 49, 51-60, 62, 66, 69, 74-75, 85-86, 88-91, 93, 97-100, 102-118, 122, 124-125, 134-140, 145, 148 and 150-151 of plaintiffs' statement of facts by claiming, in whole or in part, that "plaintiffs solely rely on self-serving party declarations to support this alleged undisputed fact." *See also* Response at 1 n. 1, *citing Hall v. Bodine*, 276 F.3d 345, 354 (7th Cir. 2002)(affidavits that contain conclusory allegations unsupported by the record are insufficient to defeat summary judgment) and *Amadio v. Ford Motor Company*, 238 F.3d 919, 926 (7th Cir. 2001)(affidavits contradicting prior sworn testimony cannot be used to manufacture factual dispute). Defendants do not claim plaintiffs' allegations are conclusory or contradictory. Absent such a showing, self-serving testimony is sufficient to support a party's factual statement. *See Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)("It is not the self-serving nature of the affidavits, however, that sealed their fate in these cases. After all, most affidavits submitted for these purposes are self-serving").

In any event, defendants are not solely to blame for the chaotic state of the record. Plaintiffs' statement of additional facts is peppered with legal and factual arguments. *See* Pl. Facts at ¶¶ 1-9, 18, 21, 36-39, 45-46, 54, 57-60, 69, 74, 85-86, 88-89, 93, 96-98 102-105, 107, 111, 113, 115-118, 134-140 and 145. As is defendants' statement of facts. *See* Def. Facts at ¶¶ 16, 19-21, 23, 27, 29, 33-35, 38-43, 45-48, 50-52, 54-55, 57-59, 62-63, 69, 81-84, 90, 94-95, 113, 159, 169. "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertion in an organized manner; it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). As a result, the court will only consider the parties' *factual* statements to the extent they are properly supported by the record.

3

## B.  Facts

Despite the contentious way in which the parties have presented the complex issues in this case, the underlying facts are relatively straightforward and undisputed. In January 2002, plaintiffs merged with Howard Schultz & Associates International, Inc. ("HS&A"). Prior to the merger, HS&A provided audit recovery services to customers through independent contractors. HS&A's independent contractors often engaged other independent contractors ("secondary contractors") to assist in their audits.

Between 1997 and 2001, HS&A invested substantial resources in developing a computer program called SUREF!ND. SUREF!ND identifies lost profits due to payment errors. SUREF!ND is password-protected and licensed for exclusive use of those under contract with plaintiffs. The licensing agreement specifically provides that SUREF!ND is not be sold or redistributed to any other person for any reason. Since 2001, HS&A has maintained an employee handbook containing policies and guidelines concerning protection and non-disclosure of confidential information.

HS&A provided SUREF!ND, along with access codes, to its independent contractors to perform accounts payable auditing services for its customers. SUREF!ND contains several recovery audit tools, including various modules called Analyzer Module, Charge-Back Module, Deal Link Pro Module, Duppro Module, Extract Module, Group Options Module, Late Notification Module, Price Decline Module and Short Ship Module. According to plaintiffs, the business logic underlying SUREF!ND's recovery audit modules is dependent upon "years of audit recovery experience" and knowledge of its auditors. Pl. Facts at ¶¶ 42-43. Specifically, plaintiffs claim the interaction between its auditors and programmers is instrumental in the development of the recovery audit

4

functionality and business logic underlying SUREF!ND. On April 3, 2003, plaintiffs received copyright registration for SUREF!ND.

HS&A required confidentiality agreements with their independent contractors. The parties dispute whether HS&A required their independent contractors to enter into confidentiality agreements with their secondary contractors. Defendants offer evidence that approximately four or five independent contractors, 35 secondary contractors and one customer had access to SUREF!ND, or a version of SUREF!ND, without entering into a confidentiality agreement with HS&A.[1] HS&A presented SUREF!ND to several prospective customers without first entering into a confidentiality agreement. The parties dispute the extent of plaintiffs' presentations. Neither party provides evidence as to the total number of individuals given access to SUREF!ND with or without confidentiality agreements.

In January 2001, Nathanael and Aaron Williams formed Kirix with Kenneth Kaczmarek. David and Benjamin Williams joined the company in August 2001. Prior to forming Kirix, the individual defendants worked for plaintiffs. Nathanael and Aaron Williams signed confidentiality agreements with HS&A, while David and Benjamin did not. During their employment with plaintiffs, the individual defendants were exposed to SUREF!ND.

After forming Kirix, the individual defendants created a software program called ProfitPoint. ProfitPoint is Kirix's only software program available for license. ProfitPoint enables internal audit departments to increase the efficiency of identifying and recovering overpayments by allowing them

---

[1] Defendants fail to offer evidence to support their assertion "hundreds of independent contractors in Europe received copies of SUREF!ND along with the access codes necessary to use the software *with no contracts.*" Reply at 11 (emphasis added). Rather, the individual responsible for distributing SUREF!ND in Europe simply avers he "was never directed by HS&A to keep SUREF!ND confidential or to distribute SUREF!ND subject to any confidentiality agreement." *See also* Def. Facts at ¶ 63, *citing* Ex. 19 at ¶ 5. This testimony does not establish independent contractors in Europe did not have confidentiality agreements with HS&A.

to import larger quantities of data into the software and process it quickly. Kirix sells ProfitPoint to customers in the recovery audit industry, including plaintiffs' customers.

According to defendants, similarities between ProfitPoint and SUREF!ND include "user interface elements such as menus, toolbars, or right click menus for accessing common functions such as sorting records, inserting columns, hiding columns or coloring columns, dockable frames for organizing the user workspace or status bar for displaying table metrics, grid components for displaying data, tree controls for managing projects, dialogs or panels for creating or modifying formulas or for creating, modifying, or representing relationships between tables; and tabbed list controls for storing and displaying formulas." Def. Ex. 3 at ¶ 43. Both SUREF!ND and ProfitPoint contain promotional analysis tools that help auditors identify overpayments arising from missed promotions and recovery audit tools targeting duplicate payments and missed floorstock protection. *Id.* at ¶¶ 46-47.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.    Copyright Infringement

To establish copyright infringement, plaintiffs must prove: "(1) ownership of a valid copyright; and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Defendants assert plaintiffs cannot prove either element.

In general, software is amendable to copyright protection. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 n. 5 (1st Cir. 1995). A certificate of copyright registration creates a rebuttable presumption that the assignee is the owner of a valid copyright. *Mid America Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995), *citing* 17 U.S.C. § 410(c). Plaintiffs obtained copyright registration for SUREF!ND 3.1.1 on April 3, 2003. Therefore, plaintiffs' copyright infringement claim turns on whether defendants copied SUREF!ND's protected elements.

According to plaintiffs, "[t]his case, *first and foremost*, involves infringement and misappropriation of SUREF!ND's recovery audit functionality, including, but not limited to, its confidential and proprietary recovery audit modules and the proprietary business logic underlying the modules." Response at 4 (emphasis in original). The Copyright Act provides:

> In no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). Thus, the Copyright Act delineates between an idea, which cannot be copyrighted, and the expression of an idea, which may be copyrighted. *Harper & Row Publishers v. Nation Entertainment*, 471 U.S. 539 (1985). In drawing this line, copyright law seeks to strike a "delicate equilibrium" between "afford[ing] protection to authors as an incentive to create, and []

approximately limit[ing] the extent of that protection as to avoid the effects of monopolistic stagnation." *Computer Assoc. Int'l, Inc. v. Altai*, 982 F.2d 693, 696 (2d Cir. 1992).

In its statement of facts, plaintiffs claim "[t]he recovery audit tools, including the underlying business logic and recovery audit practices and techniques coded into the tools, are packaged in SUREF!ND as a single piece of software." Pl. Facts at ¶ 47. *See also* Pl. Facts at ¶ 43 ("In creating and modifying SUREF!ND, HS&A and now PRG-Schultz' programmers rely heavily on the years of audit recovery experience and knowledge of HS&A and PRG-Schultz auditors") and ¶ 44 ("The interaction between auditors and programmers is instrumental in the development of the recovery audit functionality and business logic underlying SUREF!ND"). In other words, plaintiffs take issue only with what ProfitPoint does, not how it does it. Drawing all inferences in plaintiffs' favor, SUREF!ND's modules are unprotected processes.

"Patent and copyright laws protect distinct aspects of a computer program." *Atari Games Corp. v. Nintendo of America, Inc.*, 975 F.2d 832, 839 (Fed. Cir. 1992). Patent law "provides protection for the process or method performed by a computer in accordance with a program," whereas copyright protects only "the expression of that process or method." *Id.* However, if the patentable process and its expression are indistinguishable or inextricably intertwined, then "the process merges with the expression and precludes copyright protection." *Id.* at 839-40. According to plaintiffs, SUREF!ND embodies years of auditing experience. Nevertheless, an author cannot achieve protection for a process simply by embodying it in a computer program. *Id.* at 842 ("An author cannot acquire patent-like protection by putting an idea, process, or method of operation in an unintelligible format and asserting copyright infringement against those who try to understand that

idea, process or method of operation"). Based on this record, plaintiffs' copyright infringement claim fails as a matter of law.

## III.    State Law Claims

The court may relinquish supplemental jurisdiction over state law claims when all federal claims have been dismissed. 28 U.S.C. § 1367(c)(3). According to the general rule, "when all federal claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1252 (7th Cir. 1994). However, plaintiffs claim the court may exercise diversity jurisdiction over its state law claims.

The parties agree jurisdiction is proper under 28 U.S.C. § 1332. However, diversity jurisdiction requires a controversy between citizens of different states, not residents of different states. 28 U.S.C. § 1332(a)(1); *Guaranty National Title Co., Inc. v. J.E.G. Associates*, 101 F.3d 57, 58 (7th Cir. 1996). In the second amended complaint, plaintiffs allege the individual defendants' residency, rather than citizenship. Moreover, plaintiffs fail to allege PRGRS, Inc.'s principal place of business. Defendants' jurisdictional statement in support of their motion for summary judgment suffers from the same defects. Therefore, the parties must submit jurisdictional statements that include the citizenship of each party as well as PRGRS, Inc.'s principal place of business.

Assuming the parties confirm the individual defendants' citizenship is the same as their residency and PRGRS, Inc.'s principal place of business is the same as its parent corporation, there is complete diversity of the parties. According to the parties' pleadings, the individual defendants are Illinois residents. Kirix is an Illinois corporation with its principal place of business in Elmhurst, Illinois. On the other side, PRG-Schultz International, Inc. is a Georgia corporation with its principal place of business in Georgia. PRGRS, Inc. is a Delaware corporation and a wholly-owned subsidiary

9

of PRG-Schultz International, Inc. Moreover, the parties agree the amount in controversy exceeds $75,000. If the amount in controversy is uncontested, the court must accept the parties' representation unless it "appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Target Market Publishing, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1141-42 (7th Cir. 1998), *quoting St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Given the significant resources plaintiffs invested to develop SUREF!ND, it does not appear to a legal certainty that their claim is for less than $75,000.

## A.    The ITSA Violation

To state a claim for trade secret misappropriation under ITSA, plaintiffs must demonstrate: (1) a trade secret, (2) misappropriated by defendants, and (3) used by defendants for business purposes. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992). Defendants claim plaintiffs cannot prove SUREF!ND is a misappropriated trade secret.

Under the ITSA, a "trade secret" is defined as:

information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1)    is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure; and

(2)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d). "Thus to show that particular information is a trade secret, [plaintiffs]] must demonstrate that it is valuable, not known to others who might profit by its use, and has been

handled by means reasonably designed to maintain secrecy." *IDX Systems Corp. v. Epic Systems Corp.*, 285 F.3d 581, 584 (7th Cir. 2002).

Defendants first claim plaintiffs' designation of the entire SUREF!ND program as a trade secret is insufficient under *IDX Systems*. In *IDX Systems*, the Seventh Circuit found that "a plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." *Id.* However, the court made this statement in addressing the plaintiffs' claim that software sold to third parties constituted a trade secret. *Id.* Defendants fail to show this standard applies to software unavailable on the commercial market. Indeed, the ITSA specifically contemplates the protection of a computer program as a trade secret. 765 ILCS 1065/2(d).

Nor do defendants show that SUREF!ND's inclusion of elements contained in commercially available software defeats its possible status as a trade secret. To the contrary, "[a] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Minnesota Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 595-96 (7th Cir. 2001). Accordingly, the court must focus on the secrecy of the information in determining whether SUREF!ND qualifies as trade secret. *Mangren Research & Dev. Corp. v. National Chem. Co., Inc.*, 87 F.3d 937, 942 (7th Cir. 1996).

Plaintiffs provide evidence of measures taken to protect the secrecy of SUREF!ND. Specifically, plaintiffs require confidentiality agreements from its independent and secondary contractors. Plaintiffs maintain an employee handbook containing guidelines regarding the protection and nondisclosure of confidential information. SUREF!ND is password-protected and

11

licensed for exclusive use of those under contract with plaintiffs. On the other hand, defendants offer evidence of specific instances where plaintiffs failed to implement these measures. For example, defendants show that several independent contractors, secondary contractors and customers had access to SUREF!ND without confidentiality agreements. However, it is difficult to assess the significance of plaintiffs' failures without evidence indicating the total number of individuals with access to SUREF!ND. In any event, "[w]hether or not the actions plaintiffs actually took [are] sufficient to satisfy the ITSA's reasonableness standard [is] a question for the jury." *Id.* at 943. *See also Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179-80 (7th Cir. 1991)("But only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment because the answer depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved").

Moreover, plaintiffs raise a genuine issue of material fact as to whether the individual defendants misappropriated SUREF!ND. Misappropriation includes breach of a confidential relationship to obtain a trade secret. 765 ILCS 1065/2(a)-(b). Employees have a common law duty to protect an employer's confidential information even after termination. *SEC v. Cherif*, 933 F.2d 403, 411 (7th Cir. 1991). *See also AMP Inc. v. Fleischhacker*, 823 F.2d 1199, 1202 (7th Cir. 1997)(Illinois law prevents an employee from taking confidential information disclosed during the employment relationship). Defendants concede the individual defendants had access to SUREF!ND during their employment with plaintiffs and thereafter, created a software program similar to SUREF!ND. Under these circumstances, a reasonable jury could conclude that the individual defendants misappropriated a trade secret from plaintiffs. *See Sokol Crystal Products, Inc. v. DSC*

*Communications Corp.*, 15 F.3d 1427, 1432 (7th Cir. 1994)(jury entitled to draw inference of misappropriation based on defendant's access to plaintiff's trade secrets and development of similar product).

The jury could reach the same conclusion regarding Kirix. An employer may be held liable for misappropriation of a trade secret as a consequence of hiring a competitor's employee and placing the employee in a position resulting in the inevitable disclosure or use of the trade secret. *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). The employer's liability is premised on the realization that unless an employee possesses "an uncanny ability to compartmentalize information, he will necessarily" be relying on and using his former employee's trade secrets. *Id.* at 1269. ProfitPoint is Kirix's only software program. Drawing all inferences in plaintiffs' favor, a reasonable jury could infer the individual defendants created Kirix for the sole purpose of developing and marketing ProfitPoint based on knowledge obtained from their exposure to SUREF!ND. Based on this record, defendants' motion for summary judgment on plaintiffs' ITSA claim must be denied as to all defendants.

## B. Breach of Contract

Finally, defendants claim plaintiffs cannot establish their breach of contract claims against Nathanael and Aaron Williams under Texas law. Each contract contains a choice of law provision designating Texas law as the applicable substantive law.

In a diversity case, the court must apply the forum state's choice of law rules to determine the applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Illinois applies a contract's choice of law provision as long as the contract is valid, the chosen law is not contrary to Illinois' fundamental public policy and there is a reasonable relationship between the

chosen law and the parties or transaction. *Fulcrum Financial Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000). Plaintiffs do not contest the enforcement of the contractual choice of law provision.

To establish a breach of contract claim under Texas law, plaintiffs must demonstrate: (1) existence of a valid and enforceable contract; (2) its performance; (3) breach by defendants; and (4) resultant injury. *Petri v. Gatlin*, 997 F. Supp. 956, 964 (N.D. Ill. 1997) and cases cited therein. Defendants claim plaintiffs cannot establish Nathanael or Aaron Williams breached their contracts because the information they allegedly disclosed was not confidential. As discussed above, plaintiffs raise a genuine issue of material fact as to whether SUREF!ND is confidential and whether defendants used SUREF!ND to create ProfitPoint. As a result, defendants' summary judgment motion as to Counts III through V must be denied.

## CONCLUSION

Defendants are entitled to judgment as a matter of law on Count I. The motion for summary judgment as to Counts II through V is denied.

September 19, 2003                    ENTER:

                                      Suzanne B. Conlon
                                      United States District Judge